SWYGERT, Circuit Judge.
These appeals present a question of first impression among the circuits which arises under the new Bankruptcy Code: whether a debtor’s cause of action for violations of the Truth in Lending Act and similar state statutes is “property” that may be claimed as exempt under the exemption provision of the Code, 11 U.S.C. §§ 522(d)(1) and (5). The district court held that the rights of action may not be claimed as exempt. We hold that they may be claimed, and we reverse.
The facts in these three cases are not in dispute; nor are they significant to our holding which decides a pure question of law. In each case, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[2] Each petition was filed after October 1, 1979, and is therefore governed by the Code rather than the former Bankruptcy Act of 1898. Each debtor disclosed that he or she had a claim against a lender for violations of the federal Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., or the Illinois Consumer Installment Loan Act, IRS, ch. 74, §§ 51 et seq. No claim exceeded the $7,900 total amount a debtor is permitted to claim as exempt under 11 U.S.C. §§ 522(d)(1) and (5).[3] The bankruptcy court for the Central District of Illinois ruled that such rights of action were not “property” within the meaning of section 522(d)(5). The district court, deciding the three cases together, affirmed. In re Smith, 5 B.R. 500 (C.D.Ill.1980).
The product of eight years of study and debate, the Bankruptcy Reform Act of 1978 represented the first major revision of bankruptcy law in forty years.[4] The Bankruptcy Act of 1898 had not been overhauled since 1938, when consumer credit was virtually nonexistent and commercial credit bore no resemblance to the modern exigencies of the Uniform Commercial Code. Because of these and other developments in debt- or/creditor relationships, Congress in 1970 created the Commission on the Bankruptcy Laws of the United States to study and recommend changes in the bankruptcy laws. In 1973, the Commission issued its report, which contained a draft of a bill to implement its recommendations.[5] The National Conference of Bankruptcy Judges submitted an alternative draft bill. The 94th Congress held hearings on both bills from May 1975 to May 1976.[6] Both houses of Congress then began the process of drafting and redrafting which led eventually to the Bankruptcy Reform Act of 1978.[7]
*890 No section of the 1898 Act was left untouched. The Reform Act establishes a new system of bankruptcy courts parallel to but independent of federal district courts— to become operational April 1, 1984 [8]—and it enacted a new Bankruptcy Code repealing entirely the former code.[9] Every bankruptcy case after October 1, 1979, is to be filed under one of the four operative chapters of the new Code: Chapter 7 (liquidation), Chapter 9 (adjustment of debts of a municipality), Chapter 11 (reorganization), and Chapter 13 (adjustment of debts of an individual with regular income). The three other chapters of the Code apply generally to all such cases: Chapter 1 offers general provisions such as definitions and rules of construction; Chapter 3 concerns case administration; and Chapter 5 defines the rights and responsibilities of creditors and debtors and the scope of the estate. It is this last chapter which we must interpret here.
Section 541 of the Code reflects the policy of the reformers to include all of the property of the debtor in a bankruptcy case.[10] The bankrupt’s estate is defined broadly, with some exceptions and additions, as “all legal or equitable interests of the debtor in property as of the commencement of the case.”[11] Thus there is no question, as all parties here agree, that the estate includes causes of action such as the truth-in-lending claims in these cases.[12] Section 522 allows the debtor to recover through exemptions some of that property which has become the estate. This exemption section is a significant departure from prior law. Under the former act, exemptions were treated as a matter of state law. Congress found that this practice created great disparity in treatment of debtors, and that many state statutes did not leave debtors sufficient property to begin their economic lives anew.[13] Congress therefore established for the first time a set of federal exemptions and provided that a debtor may choose between those exemptions and those to which he is entitled under state laws and under other federal laws (such as social security payments or veterans benefits).[14] Section 522 thus balances the federal interest in ensuring a fresh start with the states’ interests in regulating credit within their borders. It encompasses also a recognition that local circumstances vary.[15]
*891 Section 522(d) specifies the federal exemptions available to debtors. They include, for example, up to $200 in household goods, $500 in jewelry, $750 in professional items or tools of the trade, and $1,200 in a motor vehicle. The controversy in these cases concerns two paragraphs of section 522(d): namely, the homestead exemption, section 522(d)(1), and the general exemption, section 522(d)(5). These sections provide exemptions of
(1) The debtor’s aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
(5) The debtor’s aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.
11 U.S.C. § 522(d) (emphasis added). The dispute here is caused by the words “any property” in paragraph (5). The trustee contends that they refer only to other property that is specified in section 522: household goods, motor vehicles, etc. The debtors argue that they have the same broad meaning as in section 541: “all legal or equitable interests of the debtor.” We agree with the debtors that Congress did not intend to distinguish between section 522 property and section 541 property. We hold that the general exemption may be applied to any property that is property of the estate—including, of course, causes of action arising under the federal Truth in Lending Act or similar state statutes.
Our holding is based primarily on the legislative history of the Bankruptcy Reform Act of 1978. Congress found that “there is a Federal interest in seeing that a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start.”[16] The general exemption was intended to ensure that there was no discrimination between homeowners and non-homeowners in achieving that goal.[17] By permitting non-homeowners (or homeowners with property valued under $7,500) to exempt the unused portion of the homestead exemption, plus $400, Congress in effect gave all debtors potentially the same $7,900 stake. The draft bill submitted by the Bankruptcy Commission, which was used as a framework for the final bill, allowed the debtor to use only specific types of property to make up the deficiency in the homestead exemption.[18] In contrast, the Code as enacted permits the use of “any property.” Exemption statutes are to be construed liberally.[19] In view of Congress’ goal of providing a meaningful fresh start for debtors, it makes no sense to limit the type of property that may be applied to the general exemption without a clear statement of Congressional intent to do so.
The structure of sections 541 and 522 also demonstrate that we should not draw any distinction as to what constitutes property under them. Section 541 represents a major change from the old act, for all property is included in the estate—even exempt property. If a debtor does not claim property as exempt, as provided for in section 522(/), it is not exempt and the trustee may *892 dispose of it as he sees fit. Under the old act, exempt property was exempt, no matter what the bankrupt did, because of its very nature.[20] A debtor did not have to claim affirmatively his exempt property, for by its very nature it could not be taken from him. Trustees were thus forced to petition courts to declare what property was exempt and what was not. By including even exempt property within the estate under the Code, Congress eliminated this conceptual distinction between exempt and non-exempt property. We should not recreate that distinction, as the district court does, by holding that section 522 property is different from section 541 property.
In addition, Congress obliterated in the Code the distinctions contained in the 1898 Act among various rights of action.[21] All causes of action become property of the estate under section 541. A truth-in-lending claim is no different from any other. This change and the removal of the conceptual difference between exempt and nonexempt property—along with numerous other sections of the Code—show that Congress intended to simplify proceedings and to prevent delays in the administration of a bankrupt’s estate through the elimination of artificial distinctions that had previously led to prolonged disputes in the courts.[22]
Those few courts that have considered this question—all bankruptcy courts—have adopted our view. In fact, the bankruptcy court and the district court in this case seem to have been the only ones to draw a distinction between section 522 property and section 541 property. In In re Nichols, 4 B.R. 711 (Bkrtcy.E.D.Mich.1980), the court permitted income tax refunds—not otherwise excludable under section 522(d)—to fall under the general exemption of section 522(d)(5) and specifically held that there was no difference between property under section 522 and section 541. Id. at 715-16. The courts in In re Upright, 1 B.R. 694 (Bkrtcy.N.D.N.Y.1979) (inventory), and in In re Laird, 6 B.R. 273 (Bkrtcy.E.D.Pa.1980) (arbitration award), also held that non-section 522 property could be exempted under the general exemption.[23] We believe these decisions reflect the only conclusion that can properly be reached.[24]
The bankruptcy court and the district court based their decisions almost exclusively on a statement in the legislative history that the exemption section was derived in large part from the Uniform Exemption Act of 1976.[25] The exemptions in section 522 are in fact similar in form to those in the Uniform Exemption Act, but their differences are significant. Section 8(d) of the *893 Uniform Exemption Act, the counterpart of section 522(d)(5), permits the exemption of “cash and liquid assets” of up to $500 if the bankrupt claims a homestead exemption and $1,500 if he does not. “Cash and liquid assets” were specifically defined. The bankruptcy and district courts drew from this difference the conclusion that the words “any property” should be similarly narrowly defined. We find it significant, however, that Congress rejected that formula—and, as noted earlier, the specific limitations of the general exemption in the Commission’s draft bill[26]—and substituted instead the broad phrase “any property.” If Congress had intended to limit the property usable under the general exemption, it certainly had examples of how it could have done so. Considering the legislative history as a whole, we must hold that Congress meant to give the general exemption as broad an application as the language it chose.[27]
We therefore hold that the debtors in these cases may claim their causes of action under the federal and state truth-in-lending acts as exempt under section 522(d)(5) of the Bankruptcy Code.
The decision of the district court is reversed.

. 11 U.S.C. §§ 701 ei seq.

. The dispositions of the truth-in-lending actions do not appear in the record. None of the parties here, however, raise any questions concerning their timing or disposition, and none of these factors would affect our decision.

. P.L. 95-598, 92 Stat. 2549 (1978).

. Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No. 93-137, 93d Cong., 1st Sess., (1973) [“Commission Report”].

. Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm, on the Judiciary, 94th Cong., 1st and 2d Sess., ser. 27 (1975-76); Hearings on S. 235 and S. 236 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm, on the Judiciary, 94th Cong., 1st Sess. (1975).

. See House Report No. 95-595, 95th Cong., 1st Sess. (1977), pp. 2-5 [“House Report”]; Senate Report No. 95-989, 95th Cong., 2d Sess. (1978), *890 pp. 1-4 [“Senate Report”], U.S.Code Cong. & Admin.News 1978, p. 5787.

. P.L. 95-598, 92 Stat. 2549 (1978), §§ 201-252.

. Id., § 101.

. Commission Report, pt. I, 192-95; House Report, 175-77.

. 11 U.S.C. § 541(a)(1).

. House Report, 175-76, 367-68, Senate Report, 82 See also Collier on Bankruptcy, f 541.10 (15th ed., 1980). Causes of action were also property of the estate under the old act. Riggs v. Government Employees Finance Corp., 623 F.2d 68 (9th Cir. 1980); Binnick v. Avco Financial Services of Nebraska, Inc., 435 F.Supp. 359 (D.Neb.1977); Murphy v. Household Finance Corp., 424 F.Supp. 176 (S.D.Ohio 1976); In re Warren, 387 F.Supp. 1395 (S.D.Ohio 1975).

. House Report, 126; Committee Report, 171.

. Some items that may be exempted under other federal laws include:
Foreign Service Retirement and Disability payments, 22 U.S.C. § 1104;
Social security payments, 42 U.S.C. § 407; Injury or death compensation payments from war risk hazards, 42 U.S.C. § 1717;
Wages of fishermen, seamen, and apprentices, 46 U.S.C. § 601;
Civil service retirement benefits, 5 U.S.C. § 8346;
Longshoremen’s and Harbor Workers’ Compensation Act death and disability benefits, 33 U.S.C. § 916;
Railroad Retirement Act annuities, pensions, and benefits, 45 U.S.C. §§ 2281, 352(e);
Veterans benefits, 38 U.S.C. § 3101;
Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. § 562; and Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. § 175.

. The section provides that a state may “opt-out” of the federal exemptions by passing a statute specifically stating that federal exemptions may not be taken. 11 U.S.C. § 522(b)(1). To date, only thirteen states have done so: Arizona, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Nebraska, Ohio, South Dakota, Tennessee, Virginia, and Wyoming.

. House Report, 126; see also House Report, 117-18, 176; Senate Report, 6. The final figures in the statute were the result of a compromise between the House and Senate versions of the bill. See Statement of Hon. Don Edwards, 124 Cong.Rec.H. 11089, 11095 (1978); Statement of Hon. Dennis DeConcini, 124 Cong. Rec.S. 17406, 17412 (1978).

. House Report, 361. The district court states, 5 B.R. at 501, that it is only “pure assumption” that the general exemption was designed to prevent discrimination against homeowners. We believe the legislative history demonstrates otherwise. See also Commission Report, pt. I, 171.

. Commission Report, pt. II, section 4-503(b)(2).

. Porter v. Aetna Casualty Surety Co., 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407 (1962); In re Aneira, 5 B.R. 673, 674 (Bkrtcy.N.D.Cal.1980); In re Coleman, 5 B.R. 76, 78 (Bkrtcy.M.D.Tenn.1980).

. Bankruptcy Act of 1898, as amended, section 70(a), formerly 11 U.S.C. § 110(a) (“The trustee of the estate of a bankrupt ... shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt ....”) (emphasis added).

. Compare clauses (5) and (6) of section 70(a) of the Bankruptcy Act of 1898, as amended, formerly 11 U.S.C. § 110(a).

. We note that both the House and Senate Reports, in their discussions of section 522, mention section 541 and its relationship to section 522, but nowhere in any of the legislative history is there any reference to alleged distinctions between the two sections. House Report, 360-61; Senate Report, 76-76. See also House Report, 368; Senate Report, 82 (on section 541).

. Other cases cited to us by the debtors, In re Bagley, 1 B.R. 116 (Bkrtcy.E.D.Pa.1979) (automobile), and In re Boozer, 4 B.R. 524 (Bkrtcy.N. D.Cal.1980) (household goods) are inapposite since they concern section 522 property, which all parties here agree may be exempted under section 522(d)(5). In In re Cramer, 3 B.R. 428 (Bkrtcy.D.Ariz.1980), the court held inventory to be exempt under section 522(d)(5), but there the question was assumed; an unrelated issue was in dispute in the case.

. Commentators have also adopted our view. See Collier on Bankruptcy, § 522.14 (15th ed. 1980) (“The unused portion of the homestead exemption may be claimed in any property, be it property that is exempt in excess of the value allowed by a particular paragraph of section 522(d), or property that is otherwise non-exempt.”); Cowans, Bankruptcy Law and Practice, § 8.6 (Interim ed. 1980) (“wild card” exemption may be used to protect otherwise nonexempt property); Miller and Cook, A Practical Guide to the Bankruptcy Reform Act, 186-87 (1980).

. House Report, 361.

. See p. 8, supra.

. The district court also cites the exemptions in section 522(d)(ll) for specific causes of action relating to compensation for losses. The court implies that Congress would not have drafted the section so carefully if any cause of action could fall under the general exemption of section 522(d)(5). 5 B.R. at 502. There is an important difference, however, between the causes of action listed in paragraph (11) and those that might be used towards the general exemption, for only the latter are limited to $400 plus any unused portion of the homestead exemption. This distinction is significant enough to justify the careful drafting of the section and the separate listing of specific causes of action.