In re Richard V. AGETON, Jr., and Opal B. Ageton, Debtors.

Richard V. AGETON, Jr., and Opal B. Ageton, Appellants,

v.

Edward CERVENKA and Sylvia Cervenka, Appellees.

BAP No. 80–1036.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Dec. 19, 1980.

Decided July 24, 1981.

Patricia Wendel, Mesch, Clark & Rothschild, P. C., Tucson, Ariz., for appellants.

Robert C. C. Heaney, Tucson, Ariz., for appellees.

Bruce Bridegroom, Bridegroom & Hayes, Tucson, Ariz., for amicus curiae.

Before HUGHES, LASAROW and KATZ, Bankruptcy Judges.

OPINION

KATZ, Bankruptcy Judge:

This appeal presents questions relating to the rights of joint debtors to elect different exemption systems under 11 U.S.C. § 522(b) and the effect of different exemption claims in the same property.

The court below, 5 B.R. 323, held that where one married debtor claims an Arizona joint homestead exemption under 11 U.S.C. § 522(b)(2)(A) the joint debtor spouse may not elect to exempt property under the federal exemptions. (11 U.S.C. § 522(b)(1)). The trial judge based his decision on Arizona Revised Statute §§ 33–1101(C) and 33–1102(B) which provide that only one homestead may be claimed by a married couple and that both husband and wife shall join in making the homestead claim. The undisputed facts indicated that both Mr. and Mrs. Ageton filed a joint declaration of homestead. The trial judge incorrectly asserted that § 522(b)(2)(A) required both joint debtors to elect state exemptions in bankruptcy if either were claiming an Arizona homestead. Therefore, the decision must be reversed.

Debtors Opal and Richard Ageton filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on February 5, 1980. Prior thereto, on November 9, 1979, Mr. and Mrs. Cervenka took judgment against debtors in the sum of $27,193 and obtained a judgment lien on debtors' residence. Thereafter, on January 21, 1980, debtors recorded a joint declaration of homestead.

After filing bankruptcy the debtors instituted an action to avoid the Cervenkas' judicial lien to the extent that such lien impaired an exemption to which the Agetons would have been entitled under subsection (b) of 11 U.S.C. § 522(f)(1). It then became necessary to determine the extent of the debtors' exemptions.

The homestead exemption in Arizona for an individual or for a married couple is $20,000. A.R.S. § 33–1101 (1056). The parties stipulated that the debtors' equity in the home (held as community property) was $27,240—slightly in excess of the judgment lien of $27,193. Mr. Ageton elected the state exemptions pursuant to 11 U.S.C. § 522(b)(2) and Mrs. Ageton elected the federal exemptions. 11 U.S.C. § 522(b)(1). Mr. Ageton then claimed an exemption of $20,000 in their home under Arizona law and Mrs. Ageton claimed an exemption of $7500 in the same property under federal law. 11 U.S.C. § 522(d)(1).

The trial court, believing that it must first determine what homestead exemption the debtors or each of them are entitled to under state law, examined Arizona law and found that, under a 1971 amendment to A.R.S. § 33–1102(B), both spouses must join in a homestead declaration affecting community or joint property.

This led him to conclude under bankruptcy law, that if the husband claims the state exemption in the family home, the wife "may not then claim a separate federal exemption" in the same property. As to 11 U.S.C. § 522(m), which applies § 522 "separately with respect to each debtor in a joint case," the court reasoned that it "does not state that one spouse is entitled to claim both a state and federal exemption." He thus concluded that both spouses were required to claim "state homestead exemptions of $20,000, or in the alternative that each claim the federal homestead exemption of $7500."

Federal law is supreme over state law under Art. VI, cl. 2 of the Constitution and therefore controls the allowance of exemptions from bankruptcy estates. The provisions of the bankruptcy code, rather than

state law, determine not only what property may be exempted from the bankruptcy estate but how those exemptions are asserted. The entire significance of state exemptions in a bankruptcy context is found in the following language:

> 11 U.S.C. § 522(b). Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate—
>
> .    .    .    .    .
>
> (2)(A) any property that is exempt under ... state or local law...;"

Thus, looking solely to federal law, we conclude that each individual debtor is free to elect whichever exemption schedule he or she may desire. In general, § 522(b) provides that "an individual debtor may" elect either the state or federal exemption schedules. This right is not lost if spouses file a joint case pursuant to 11 U.S.C. § 302. Accord: *In re Ancira*, 5 B.R. 673, 6 BCD 864 (Bkrtcy.N.D.Cal.1980, Abrahams BJ). Section 522(m) (11 U.S.C. § 522(m)) provides: "This section shall apply separately with respect to each debtor in a joint case." Therefore, "each debtor is entitled to the federal exemptions provided under this section or to the state exemption, whichever the debtor chooses." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 363, U.S. Code Cong. & Admin.News 1978, p. 5787.

The trial judge erred in construing subsection (m) so as to deny Mrs. Ageton the right to elect the exemption schedule of her choice.

A second reason for reversing the trial court is that it misunderstands the right to claim state exemptions. The only consistent statutory scheme which will work within the structure of the new Code must allow each debtor the right to claim exemptions under any applicable state provisions, or the federal alternative afforded by 11 U.S.C. § 522(d), unless the state has opted out of federal exemptions. Thus, if property is exempt under state law, it can be claimed exempt in the bankruptcy court. The trial court held that, while the debtors may elect state exemptions, each must, in making

that election, abide by state rules as to whether the claim need be joint or individual. It is clear that two spouses cannot claim two sets of state exemptions under Ariz.Rev.Stat. § 33–1101(C). However, the trial court's reasoning is at variance with the provisions of § 522(b)(2) which require that exemptions be determined as of the date of filing rather than as of the date of making the election. Therefore, in determining whether property can be exempted, the trial court need only inquire if, at the time of filing the petition for relief, the property was exempt under state law; if so, it can then be exempted.

In the present case the Ageton's residence is exempt under state law by virtue of a recorded joint homestead declaration. Mr. Ageton may claim this property as exempt in the bankruptcy regardless of the fact that Mrs. Ageton must join in the homestead under state law. Mrs. Ageton may then elect the federal exemptions under 11 U.S.C. § 522(m).

Having reached this result a question arose as to whether the two exemptions could be cumulated when the joint case was administered. It was argued that the successive administration of the separate estates would prevent one of the debtors from asserting its exemption against the property. This argument relies on two assumptions which are contrary to law. The first assumption is that all the community property of the parties will be administered in the estate of Mr. Ageton. Secondly, it is assumed that even if the property were to be administered in Mr. Ageton's estate, that Mrs. Ageton could not exempt property out of the estate before it was so administered. These assumptions appear to abridge the intent and operation of §§ 302, 522, 541 and 726.

Section 302 provides that spouses may file joint cases under the Code. After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated. 11 U.S.C. § 302(b). In the present case no order has been made to consolidate the administration of the cases, therefore this court could only guess as to whether such an order will eventually issue. At present the case remains unadministered.

In enacting § 302 Congress clearly foresaw that a joint case, involving jointly held property and debts, would facilitate consolidation of estates to the benefit of both debtors and their creditors. House Report No. 95–595, 95th Congress, 1st Sess. (1977) 321; Senate Report No. 95–989, 95th Congress, 2 Sess. (1978) 321. Factors that will be relevant in the court's determination include the extent of jointly held property and the amount of joint-owed debts. See House Report, supra at 321. Another factor in determining whether substantive consolidation will be ordered is whether there will be conflicts of interest between the creditors of the different estates. Rules of Bankruptcy Procedure 117(c).

Consolidation in cases involving joint debtors in community property states may be a practical necessity in light of §§ 541(a)(2) and 726(c). Section 541(a) provides that the commencement of a case under § 302 creates an estate. This estate consists of (1) all legal or equitable interests of the debtor in property as of the commencement of the case and (2) "(a)ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor's spouse, to the extent that such interest is so liable." Therefore, the commencement of a joint case creates two estates, however, *each* estate consists of virtually all the community property of the joint debtor's spouse. See also 11 U.S.C. § 302(b).

Section 726(c) provides that if there is property of the kind specified in Section 541(a)(2), or proceeds of such property, in the estate, such property or proceeds shall be segregated from other property of the estate, and such property or proceeds and other property of the estate shall be distributed as follows. Section 726(c)(1)–(2)(D) then provides a priority system of distribution. Under § 726 this segregated fund can

be liable for community claims made against either spouse. See also 11 U.S.C. § 101(6) defining community claims.

A fair reading of the above provisions does not support the presumption that all of the property will be administered in one estate. What it does support is that community property from both estates will be segregated pending allowance of claims. The intent of § 302(b) would require consolidation of the community property estates to facilitate administration unless this would be prejudicial to creditors or administration of the estate.

It has been further argued that the entire equity of the homestead would be administered in Mr. Ageton's estate, therefore no equity in the residence would remain in the estate of Mrs. Ageton for her to exempt. This argument ignores the interplay between §§ 541(a)(2) and 522.

Under § 541 virtually all the separate and community property interests of the debtors passes to the estate. After the property comes into the estate, the debtor is permitted to exempt it under § 522 and the court will have jurisdiction to determine what property may be exempted and what remains property of the estate. See 11 U.S.C. § 522; House Report No. 95–595, 95th Congress 1st Sess. (1977) 367–8. Section 522(c) provides that property exempted under this section is not liable during or after the case for ordinary claims other than those specifically set forth therein. Given the operation of §§ 541 and 522 it is inconceivable that property clearly a part of each debtor's estate and clearly subject to exemption by each debtor, could suddenly be lost to one debtor in contravention of § 522(c) because of a determination that all of one spouse's interest in exempt property immediately passed to the administration of the joint debtor's estate before the debtor had a chance to exempt it. Clearly the construction of the Code has not been one to deprive a debtor or the debtor's spouse of a fresh

start through the loss of exemptions. See e. g. § 522(*l*) (which allows a debtor's spouse or other dependent to claim exemptions on the debtor's behalf should the debtor fail to claim the property as exempt).

It has long been a tradition in bankruptcy that exemptions are liberally construed in favor of debtors. See, *In re Ancira*, 5 B.R. 673, 6 BCD 864 (Bkrtcy.N.D.Cal.1980); *Porter v. Aetna Casualty and Surety Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1952). When the House originally presented H.R. 8200 it sought to establish 11 categories of property for federal exemptions, including a $10,000 homestead exemption. The Senate commented on this provision by asserting: "Such a provision in joint cases would result in a husband choosing state exemptions while a wife might choose federal exemptions. Together, they could retain after bankruptcy, very substantial amounts of property, while their debts would have been discharged. The committee feels that the policy of the bankruptcy law is to provide a fresh start, but not instant affluence, as would be possible under the provisions of H.R. 8200. Moreover, current law has allowed the several state legislatures flexibility to meet the needs and fresh start requirements of the debtors of their particular states." Senate Report 95–989, 95th Congress 2d Sess. (1978) 6, U.S.Code Cong. & Admin.News 1978, p. 5792.

The final version of § 522, however, contained no specific provision to remedy the problem other than the reduction of the original $10,000 homestead amount to $7,500. A further compromise was effectuated by adding a provision to § 522(b)(1) which allows states to opt out of the use of federal exemptions. Thus, the Code "continues to recognize the state's interest in regulating credit within the states, but enunciates a bankruptcy policy favoring a fresh start."[1] House Report No. 95–595,

---

1. At the time the trial court rendered its opinion Arizona had passed legislation prohibiting an Arizona resident from electing federal exemptions. A.R.S. § 33–1133(B) (1956), as amended, laws 1980, Ch. 59 § 1. This law, however, was not effective to prevent the Ageton's from choosing federal exemption. To date, Florida, Louisiana, Ohio, Virginia, Geor-

95th Congress 2d Sess., (1977) 126, U.S.Code Cong. & Admin.News 1978, p. 6087.

The failure of Congress to provide specific limitations upon the use of state and federal exemptions and its intent favoring fresh starts for debtors should be cornerstones from which we should interpret the Code. With this in mind we hold that Mr. Ageton may claim $20,000 equity in the home as exempt under state law and allow Mrs. Ageton to exempt an additional $7,500 equity under the federal exemptions.

In rendering this decision we are not allowing the Agetons to claim two homesteads in contravention of Arizona law. Instead we are allowing them to claim that which is exempt under state law and that which is exempt under federal law. Although it may appear that two homesteads are being asserted, careful analysis clearly leads to the conclusion that only one *Arizona homestead* is being asserted.

HUGHES, Bankruptcy Judge, dissenting:

I dissent.

Since I believe that the Bankruptcy Code does not permit Mr. and Mrs. Ageton to be accorded a $27,500 exemption in their home, I would reach the same practical result as the trial court—limiting the total exemption to $20,000—but for different reasons.

## I

This appeal presents questions relating to (1) the rights of joint debtors to elect different exemption systems under 11 U.S.C. § 522(b) and (2) the effect of different exemption claims to the same property. The panel and I agree that each spouse may elect a different exemption system, whether state or federal, and that each spouse may make a separate claim of exemption to the same property. We part company as to the effect, not the propriety, of the separate claims.

As I read the Code, each debtor is limited to exempting property from his or her es-

gia, Arizona, Kentucky, Kansas, Indiana, South Dakota, Nebraska, Tennessee, Wyoming, Illinois, Alabama and Oklahoma have chosen to

tate, the Agetons' community property home is property of each debtor's estate, and Mrs. Ageton's selection of the $7500 federal exemption instead of the $20,000 state exemption she is entitled to assert gives her trustee in bankruptcy a $12,500 windfall. I would therefore join the trial judge in permitting her to change to the state exemption.

The panel concludes that the effect of the separate exemptions is to add Mrs. Ageton's $7500 on top of Mr. Ageton's $20,000.

In my opinion, the panel reaches this conclusion by failing to give adequate consideration to the new relationship between exemptions and property of the estate under the Code. Sec. II C, below.

## II

Federal law is supreme over state law under Art. VI, cl. 2 of the Constitution and therefore controls the allowance of exemptions from bankruptcy estates. The provisions of the Bankruptcy Code, rather than state law, determine not only what property may be exempted from the bankruptcy estate but how those exemptions are asserted. The entire significance of state exemptions in a bankruptcy context (except for § 522(b)(2)(B), which is not relevant here) is found in the following language:

"11 U.S.C. § 522(b). Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate—

.    .    .    .    .

(2)(A) any property that is exempt under ... state or local law...;"

Thus, while federal law permits the debtor in bankruptcy to exempt from the estate "any property that is exempt under ... state or local law," it does not incorporate state procedures for determining how exemptions are claimed in bankruptcy nor how property is removed from "property of the estate."

Those procedures involve three basic steps under the Code.

enact legislation opting out of the federal exemptions.

Step one is an election between two separate exemption schedules, one state and one federal. 11 U.S.C. § 522(b). Step two is the listing of specific property (or interests) that are claimed exempt. 11 U.S.C. § 522(*l*). Step three is application of those exemption claims to property of the estate. 11 U.S.C. § 541(a).

## A. STEP ONE

Looking only at federal law, which we must, there can be no doubt that each individual debtor is free to elect whichever exemption schedule he or she may desire. In general, § 522(b) provides that "an individual debtor may" elect either the state or federal exemption schedules. This right is not lost if spouses file a joint case pursuant to 11 U.S.C. § 302. Accord: *In re Ancira*, 5 B.R. 673, 6 BCD 864 (Bkrtcy.N.D.Cal.1980, Abrahams BJ). 11 U.S.C. § 522(m) provides: "This section shall apply separately with respect to each debtor in a joint case." Therefore, "each debtor is entitled to the federal exemptions provided under this section or to the state exemption, whichever the debtor chooses." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 363, U.S. Code Cong. & Admin.News 1978, p. 6319.

The trial judge erred in construing subsection (m) so as to deny Mrs. Ageton the right to elect the exemption schedule of her choice.

## B. STEP TWO

Each debtor must also claim specific property exempt according to the schedule that has been elected. 11 U.S.C. § 522(*l*). *In re Smith*, 640 F.2d 888 (7th Cir. 1981). Mr. Ageton claimed the home exempt to the extent of $20,000 under state law and Mrs. Ageton claimed the home exempt to the extent of $7500 under federal law.

State law does, of course, control the nature and extent of any exemption claimed under its provisions. But it is not contended that Mr. Ageton's claim under state law is faulty. On the other hand, because of the supremacy clause, state law cannot affect the amount of Mrs. Ageton's federal exemption claim. Mr. Ageton is entitled to make his $20,000 claim and Mrs. Ageton to make her $7500 claim.

## C. STEP THREE

The final step requires application of the exemptions claimed to property of each debtor's estate. As provided by 11 U.S.C. § 522(b), the exemptions are "from property of the estate..."

### 1.

Under the Code, unlike the former Act, all property (even if subject to being claimed exempt) is property of the estate. House Report No. 95–595, 95th Cong. 1st Sess. (1977) 360. *In re Smith*, 640 F.2d 888 (7th Cir. 1981). Property of the estate is subject to administration for the benefit of creditors unless it is exempted by the debtor, 11 U.S.C. § 522(b), or abandoned by the trustee, 11 U.S.C. § 554. Property that qualifies as exempt is not withdrawn from the estate until expressly claimed by the debtor, or by a dependent of the debtor, who makes the claim on behalf of the debtor. 11 U.S.C. § 522(*l*). "If a debtor does not claim property as exempt, as provided for in section 522(*l*), it is not exempt and the trustee may dispose of it as he sees fit." *In re Smith*, supra.

### 2.

Property of the estate is defined in 11 U.S.C. § 541(a), which provides that the "commencement of a case ... creates an estate" and that the "estate is comprised of" specified property interests. For our purposes, the definition found in § 541(a)(2) is critical. It places in the debtor's estate "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal or joint management and control of the debtor..." 11 U.S.C. § 541(a)(2)(A).

Arizona law provides that each spouse has equal or joint management and control of the community property. Ariz.Stat.Ann. §§ 25–214B, C (1976). It was stipulated that the house is community property. Thus, whether Mrs. Ageton filed bankruptcy or not, the home was property of Mr. Ageton's estate. For the same reason, it was also property of Mrs. Ageton's estate.

**3.**

Applying Mr. Ageton's $20,000 claim, it follows that the home was exempt to the extent of $20,000 from his estate. Applying Mrs. Ageton's $7500 exemption, it also follows that the home was exempt to the extent of $7500 from her estate. But it also follows that Mrs. Ageton's failure to assert the $20,000 state homestead exemption would leave the difference (namely $12,500) in her estate for the benefit of creditors. *In re Smith*, supra. 11 U.S.C. § 726(c).

Put in different terms, Mr. Ageton's estate is comprised of the community property home, which has an equity of $27,240 except for the Cervenkas' lien of $27,193. Except for the lien, Mr. Ageton would have an exemption of $20,000. Accordingly, the Cervenkas' judicial lien is avoided to the extent of $20,000. 11 U.S.C. § 522(f)(1).

Mrs. Ageton's estate also is comprised of the community property home. 11 U.S.C. § 541(a)(2)(A). The Cervenkas' lien having been avoided to the extent of $20,000, the home now has an equity of $20,000 and the Cervenkas have a lien of $7193. Whether Mrs. Ageton claims an exemption of $7500 or $20,000, it applies to the equity of $20,000 that exceeds the Cervenkas' lien. The Cervenkas' lien therefore does not impair Mrs. Ageton's exemption and no further avoidance of the Cervenka lien is indicated.

### III

The foregoing analysis demonstrates that the Agetons' home may be exempted from both Mr. Ageton's estate and from Mrs. Ageton's estate, but only to the extent and value asserted by each debtor. The analysis depends on there being separate estates for both debtors.

The fact that Mr. and Mrs. Ageton filed a joint petition as permitted by 11 U.S.C. § 302(a) does not affect the analysis. Neither would an order of consolidation change the result.

### A.

Section 302(a) provides that a husband and wife may file a single, joint petition. The purpose of a joint petition, as explained by Congress, is convenience: "[T]he cost of administration will be reduced, and there will be only one filing fee." House Report No. 95–595, 95th Cong. 1st Sess. (1977) 321, U.S.Code Cong. & Admin.News 1978, p. 6277.

A joint case creates two separate estates, however, and "the court shall determine the extent, if any, to which the debtors' estates shall be consolidated" in a joint case. 11 U.S.C. § 302(b). Thus, in the absence of such an order, a joint case—just as separate cases—consists of a separate estate for each spouse.

### B.

Although 11 U.S.C. § 302(b) permits the court to order consolidation of estates in a joint case, it does not establish standards nor suggest the effect of consolidation. The legislative reports, on the other hand, do. Consolidation is defined as ordering the "assets and liabilities combined in a single pool to pay creditors." House Report, supra, 321, U.S.Code Cong. & Admin.News 1978, p. 6278. Standards are also suggested: "Factors that will be relevant ... include the extent of jointly held property and the amount of jointly owed debts." Ibid.

Were this all, it is arguable that an order consolidating the two estates, if otherwise appropriate, would create one estate subject to the Agetons' combined exemptions of $27,500. But this is not all. The House Report adds:

"That section of course, is not a license to consolidate in order to avoid other provisions of the title to the detriment of either the debtors or their creditors. It is designed mainly for ease of administration."

Thus, 11 U.S.C. § 302 permits only procedural consolidation, and does not permit or effect any change in substantive rights. It follows that the Agetons' exemption rights are the same whether or not they filed a joint petition under 11 U.S.C. § 302(a), and whether or not their separate estates were ordered consolidated under 11 U.S.C. § 302(b).

## IV

Appellants also urge that the Arizona statute unconstitutionally denies equal protection to married couples. The statute limits a married couple to one $20,000 exemption in the same property while, they assert, each unmarried tenant is entitled to a separate $20,000 exemption, a total of $40,000. While I join the panel in declining to consider this issue, I believe an explanation is in order.

Even if the issue had been ruled on by the trial judge, which does not appear from the record on appeal, notice was not given to the Arizona attorney general as required by 28 U.S.C. § 2403.

## V

The trial court's judgment voided the defendants' judicial lien to the extent of the plaintiffs' exemption, which was held to be either $20,000 or $15,000, depending on the debtors' election of the same exemption system. I would remand and direct that judgment be entered validating the judicial lien to the extent of $7193 and voiding the $20,000 balance of the lien. I would also permit Mrs. Ageton to change her choice of exemptions, should she be so disposed.