Justice Ginsburg,
with whom The Chief Justice and Justice Breyer join, dissenting.
In Chapter 7 bankruptcies, debtors must surrender to the trustee-in-bankruptcy all their assets, 11 U. S. C. § 541, but may reclaim for themselves exempt property, § 522. Within 30 days after the meeting of creditors, the trustee or a creditor may file an objection to the debtor’s designation of property as exempt. Fed. Rule Bkrtcy. Proe. 4003(b). Absent timely objection, “property claimed [by the debtor] as exempt... is exempt.” §522(Z).
The trustee in this case, petitioner William G. Schwab, maintains that the obligation promptly to object to exemption claims extends only to the qualification of an asset as exemptible, not to the debtor’s valuation of the asset. Respondent Nadejda Reilly, the debtor-in-bankruptcy, urges that the timely objection requirement applies not only to the debtor’s designation of an asset as exempt; the requirement applies as well, she asserts, to her estimate of the asset’s market value. That is so, she reasons, because the asset’s current dollar value is critical to the determination whether she may keep the property intact and outside bankruptcy, or whether the trustee, at any time during the course of the proceedings, may sell it.
The Court holds that challenges to the debtor’s valuation of exemptible assets need not be made within the 30-day *796 period allowed for “objection[s] to the list of property claimed as exempt.” Rule 4008(b). Instead, according to the Court, no time limit constrains the trustee’s (or a creditor’s) prerogative to place at issue the debtor’s evaluation of the property as folly exempt.
The Court’s decision drastically reduces Rule 4003’s governance, for challenges to valuation have been, until today, the most common type of objection leveled against exemption claims. See 9 Collier on Bankruptcy ¶ 4003.04, p. 4003-15 (rev. 15th ed. 2009) (hereinafter Collier) (“Normally, objections to exemptions will focus primarily on issues of valuation.”). In addition to departing from the prevailing understanding and practice, the Court’s decision exposes debtors to protracted uncertainty concerning their right to retain exempt property, thereby impeding the “fresh start” exemptions are designed to foster. In accord with the courts below, I would hold that a debtor’s valuation of exempt property counts and becomes conclusive absent a timely objection.
I
Nadejda Reilly is a cook who operated a one-person catering business. Unable to cover her debts, she filed a Chapter 7 bankruptcy petition appending all required schedules and statements. Relevant here, her filings included a form captioned “Schedule B - Personal Property,” which called for enumeration of “all personal property of the debtor of whatever kind.” App. 40a. On that all-encompassing schedule, Reilly listed “business equipment,” i. e., her kitchen equipment, with a current market value of $10,718. Id., at 49a.
Reilly also filed the more particular form captioned “Schedule C - Property Claimed as Exempt.” Id., at 56a. Schedule C contained four columns, the first headed “Description of Property”; the second, “Specify Law Providing Each Exemption”; the third, “Value of Claimed Exemption”; and the fourth, “Current Market Value of Property Without *797 Deducting Exemptions.” Id., at 57a. In the first column of Schedule C, Reilly wrote, as she did in Schedule B’s description-of-property column: “See attached list of business equipment.” Id., at 58a. On the list appended to Schedules B and C, Reilly set out by hand a 31-item inventory of her restaurant-plus-catering-venture equipment. Next to each item, e. g., “Dough Mixer,” “Gas stove,” “Hood,” she specified, first, the purchase price and, next, “Today’s Market Value,” which added up to $10,718 for the entire inventory. Id., at 51a~55a}
As the laws securing exemption of her kitchen equipment, Reilly specified in the second Schedule C column, § 522(d)(6), the exemption covering trade tools, and § 522(d)(5), the “wild-card” exemption. Id., at 58a.[1]
[2] In the value-of-claimed-exemption column, she listed $1,850, then the maximum trade-tools exemption, and $8,868, drawn from her wildcard exemption, amounts adding up to $10,718. Ibid. And in the fourth, current-market-value, column, she recorded $10,718, corresponding to the total market value she had set out in her inventory and reported in Schedule B. Ibid.
Before the 30-day clock on filing objections had begun to run, an appraiser told Schwab that Reilly’s equipment was worth at least $17,000. Brief for Petitioner 15; App. 164a. Nevertheless, Schwab did not object to the $10,718 market value Reilly attributed to her business equipment in Schedule C and the attached inventory. Instead, he allowed the limitations period to lapse and then moved, unsuccessfully, *798 for permission to sell the equipment at auction. Id., at 141a-143a.[3]
From Reilly’s filings, the Bankruptcy Judge found it evident that Reilly had claimed the property itself, not its dollar value, as exempt. Id., at 168a-169a (“I know there’s an argument. . . that . . . the property identified as exempt is really the [valuation] column, [i. e., $10,718,] but that’s not what the forms say. The forms say property declared as exempt and to see attached list. So, they’re exempting all the property. ... If the Trustee believes that ... all the property cannot be exempt, [he] should object to it.”).
The District Court and Court of Appeals similarly concluded that, by listing the identical amount, $10,718, as the property’s market value and the value of the claimed exemptions, Reilly had signaled her intention to safeguard all of her kitchen equipment from inclusion in the bankruptcy estate. In re Reilly, 403 B. R. 336, 338-339 (Bkrtcy. Ct. MD Pa. 2006); In re Reilly, 534 F. 3d 173, 178 (CA3 2008). Both courts looked to § 522(0 and Federal Rule of Bankruptcy Procedure 4003(b), which state, respectively:
“The debtor shall file a list of property that the debtor claims as exempt .... Unless a party in interest objects, the property claimed as exempt on such list is exempt.” § 522(1).
“A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is con- *799 eluded .... The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.”' Rule 4003(b).[4]
Schwab having filed no objection within the allowable 30 days, each of the tribunals below ruled that the entire inventory of Reilly’s business equipment qualified as exempt in full. App. 168a; 403 B. R., at 339; 534 F. 3d, at 178. The leading treatise on bankruptcy, the Court of Appeals noted, id., at 180, n. 4, is in accord:
“Normally, if the debtor lists property as exempt, that listing is interpreted as a claim for exemption of the debtor’s entire interest in the property, and the debtor’s valuation of that interest is treated as the amount of the exemption claimed. Were it otherwise — that is, if the listing were construed to claim as exempt only that portion of the property having the value stated — the provisions finalizing exemptions if no objections are filed would be rendered meaningless. The trustee or creditors could [anytime] claim that the debtor’s interest in the property was greater than the value claimed as exempt and [then] object to the debtor exempting his or her entire interest in the property after the deadline for objections had passed.” 9 Collier ¶ 4003.02[1], pp. 4003-4 to 4003-5.
Agreeing with the courts below, I would hold that Reilly, by her precise identification of the exempt property, and her specification of $10,718 as both the current market value of her kitchen equipment and the value of the claimed exemptions, had made her position plain: She claimed as exempt the listed property itself — not the dollar amount, up to $10,718, that sale of the property by Schwab might yield. *800 Because neither Schwab nor any creditor lodged a timely objection, the listed property became exempt, reclaimed as property of the debtor, and therefore outside the bankruptcy estate the trustee is charged to administer.
II
A
Pursuant to §522(0, Reilly filed a list of property she claimed as exempt from the estate-in-bankruptcy. Her filing left no doubt that her exemption claim encompassed her entire inventory of kitchen equipment. Schwab, in fact, was fully aware of the nature of the claim Reilly asserted. At the meeting of creditors, Reilly reiterated that she sought to keep the equipment in her possession; she would rather discontinue the bankruptcy proceeding, she made plain, than lose her equipment. See supra, at 798, n. 3. Bankruptcy Rule 4003(b) requires the trustee, if he contests the debtor’s exemption claim in whole or part, to file an objection within 30 days after the meeting of creditors. Absent a timely objection, “the property claimed as exempt ... is exempt.” § 522(0; Rule 4003. That prescription should be dispositive of this case.
The Court holds, however, that Schwab was not obliged to file a timely objection to the exemption Reilly claimed, and indeed could auction off her cooking equipment anytime prior to the administrative closing of the bankruptcy estate. In so holding, the Court decrees that no objection need be made to a debtor’s valuation of her property.
To support the conclusion that Rule 4003’s timely objection requirement does not encompass the debtor’s estimation of her property’s market value, the Court homes in on the language of exemption prescriptions that are subject to a monetary cap.[5] Those prescriptions, the Court points out, “define *801 the ‘property’ a debtor may ‘clai[m] as exempt’ as the debt- or’s ‘interest’ — up to a specified dollar amount — in the assets described in the category, not as the assets themselves.” Ante, at 782. So long as a debtor values her claimed exemption at a dollar amount below the statutory cap, the Court reasons, the claim is on-its-face permissible no matter the market value she ascribes to the asset. To evaluate the propriety of Reilly’s declared “interest” in her kitchen equipment, the Court concludes, Schwab was obliged promptly to inspect “three, and only three, entries on Reilly’s Schedule C: the description of the business equipment. ..; the Code provisions governing the claimed exemptions; and the amounts Reilly listed in the column titled ‘value of claimed exemption.’” Ante, at 785.* ****[6]
B
The Court’s account, however, shuts from sight the vital part played by the fourth entry on Schedule C — current mar *802 ket value — when a capped exemption is claimed. A debtor who estimates a market value below the cap, and lists an identical amount as the value of her claimed exemption, thereby signals that her aim is to keep the listed property in her possession, outside the estate-in~bankruptcy. In contrast, a debtor who estimates a market value above the cap, and above the value of her claimed exemption, thereby recognizes that she cannot shelter the property itself and that the trustee may seek to sell it for whatever it is worth.[7] Schedule C’s final column, in other words, alerts the trustee whether the debtor is claiming a right to retain the listed property itself as her own, a right secured to her if the trustee files no timely objection.[8]
Because an asset’s market value is key to determining the character of the interest the debtor is asserting in that asset, Rule 4003(b) is properly read to require objections to valuation within 30 days, just as the Rule requires timely objec *803 tions to the debtor’s description of the property, the asserted legal basis for the exemption, and the claimed value of the exemption. See 4 Collier ¶ 522.05[1], p. 522-28 (rev. 15th ed. 2005) (“[T]o evaluate the propriety of the debtor’s claim of exemption,” trustees need the information in all four columns of Schedule C; “[market] value” is “essential” to judging whether the claim is proper because “[exemption provisions often are limited according to . . . [the property’s] value.”).[9]
C
Requiring objections to market valuation notably facilitates the debtor’s fresh start, and thus best fulfills the prime purpose of the exemption prescriptions. See, e. g., Burling-ham v. Crouse, 228 U. S. 459, 473 (1913) (Bankruptcy provisions “must be construed” in light of policy “to give the bankrupt a fresh start.”). See also Rousey v. Jacoway, 544 U. S. 320, 325 (2005); United States v. Security Industrial Bank, 459 U. S. 70, 72, n. 1 (1982); ante, at 791. The 30-day deadline for objections, this Court has recognized, “prompt[s] parties to act and . . . producers] finality.” Taylor v. Free- *804 land & Kronz, 503 U. S. 638, 644 (1992). As “there can be no possibility of further objection to the exemptions” after this period elapses, the principal bankruptcy treatise observes, “if the debtor is not yet in possession of the property claimed as exempt, it should be turned over to [her] at this time to effectuate fully the fresh start purpose of the exemptions.” 9 Collier ¶ 4003.03[3], p. 4003-13.
With the benefit of closure, and the certainty it brings, the debtor may, at the end of the 30 days, plan for her future secure in the knowledge that the possessions she has exempted in their entirety are hers to keep. See 534 F. 3d, at 180. If she has reclaimed her car from the estate, for example, she may accept a job not within walking distance. See Brief for National Association of Consumer Bankruptcy Attorneys et al. as Amici Curiae 2-3 (hereinafter NACBA Brief). Or if she has exempted her kitchen equipment, she may launch a new catering venture. See App. 138a (Reilly “wishe[d] to continue in restaurant and catering as her occupation” postbankruptcy.).
By permitting trustees to challenge a debtor’s valuation of exempted property anytime before the administrative closing of the bankruptcy estate, the Court casts a cloud of uncertainty over the debtor’s use of assets reclaimed in full. If the trustee gains a different opinion of an item’s value months, even years, after the debtor has filed her bankruptcy petition,[10] he may seek to repossess the asset, auction it off, and hand the debtor a check for the dollar amount of her claimed exemption.* [11] With this threat looming until the ad *805 ministrative closing of the bankruptcy estate, “[h]ow can debtors reasonably be expected to restructure their affairs”? NACBA Brief 25. See In re Polis, 217 F. 3d 899, 903 (CA7 2000) (Posner, C. J.) (“If the assets sought to be exempted by the debtor were not valued at a date early in the bankruptcy proceeding, neither the debtor nor the creditors would know who had the right to them.”).
Ill
The Court and Schwab raise three concerns about reading Rule 4003 to require timely objection to the debtor’s estimate of an exempt asset’s market value: Would trustees face an untoward administrative burden? Would trustees lack fair notice of the need to object? And would debtors be tempted to undervalue their property in an effort to avoid the monetary cap on exemptions? In my judgment, all three questions should be answered no.
A
The Court suggests that requiring timely objections to a debtor’s valuation of exempt property would saddle trustees with an unmanageable load. See ante, at 790 (declining to “expand .. . the universe of information an interested party must consider in evaluating the validity of a claimed exemption”). See also Brief for Petitioner 32-33; Brief for United States as Amicus Curiae 24.[12] But trustees, sooner or later, must attempt to ascertain the market value of ex *806 empted assets. They must do so to determine whether sale of the items would likely produce surplus proceeds for the estate above the value of the claimed exemption, see § 704(a)(1); the only question, then, is when this market valuation must occur — (1) within 30 days or (2) at any time before the administrative closing of the bankruptcy estate? Removing valuation from Rule 4003’s governance thus does little to reduce the labors trustees must undertake.
The 30-day objection period, I note, does not impose on trustees any additional duty, but rather guides the exercise of existing responsibilities; under Rule 4003(b), a trustee must rank evaluation of the debtor’s exemptions as a priority item in his superintendence of the estate.[13] And if the trustee entertains any doubt about the accuracy of a debtor’s estimation of market value, the procedure for interposing objections is hardly arduous. The trustee need only file with the court a simple declaration stating that an item’s value exceeds the amount listed by the debtor.[14]
*807 If the trustee needs more than 30 days to assess market value, moreover, the time period is eminently extendable. Rule 4003(b) prescribes that a trustee may, for cause, ask the court for an extension of the objection period. Alternatively, the trustee can postpone the conclusion of the meeting of creditors, from which the 30-day clock runs, simply by adjourning the meeting to a future date. Rule 2003(e). A trustee also may examine the debtor under oath at the creditors’ meeting, Rule 2003(b)(1); if he gathers information impugning her exemption claims, he may ask the bankruptcy court to hold a hearing to determine valuation issues, Rule 4003(c). See Taylor, 503 U. S., at 644 (“If [the trustee] did not know the value of [a claimed exemption], he could have sought a hearing on the issue . . . or . . . asked the Bankruptcy Court for an extension of time to object.”). See also NACBA Brief 19, 21-23 (listing ways trustees may enlarge the limitations period for objections). Trustees, in sum, have ample mechanisms at their disposal to gain the time and information they need to lodge objections to valuation.
B
On affording trustees fair notice of the need to object, the Court emphasizes that a debtor must list her claimed exemptions “in a manner that makes the scope of the exemption clear.” Ante, at 792. If a debtor wishes to exempt property in its entirety, for example, the Court counsels her to write “full fair market value (FMV)” or “100% of FMV” in Schedule C’s value-of-claimed-exemption column. Ante, at 793 (internal quotation marks omitted). See also Tr. of Oral Arg. 6-7, 26-29; In re Hyman, 967 F. 2d 1316, 1319-1320, n. 6 (CA9 1992) (Trustees must be able to assess the validity of an exemption from the face of a debtor’s schedules.). Our decision in Taylor v. Freeland & Kronz, the Court notes, is instructive. In Taylor, the debtor recorded the term “$ unknown” as the value of a claimed exemption, which, the Court observes, raised a “warning fla[g]” because the value *808 “was not plainly within the limits the Code allows.” Ante, at 788-789.
True, a debtor’s schedules must give notice sufficient to cue the trustee that an objection may be in order. But a “warning flag” is in the eye of the beholder: If a debtor lists identical amounts as the market value of exempted property and the value of her claimed exemption, she has, on the face of her schedules, reclaimed the entire asset just as surely as if she had recorded “100% of FMV” in Schedule C’s value-of-claimed-exemption column. See Brief for Respondent 36. See also 9 Collier ¶4003.03[3], p. 4003-14 (“Only when a debtor’s schedules specifically value the debtor’s interest in the property at an amount higher than the amount claimed as exempt can it be argued that a part of the debtor’s interest in property has not been exempted.” (emphasis added)).
In this case, by specifying $10,718 as both the current market value of her kitchen equipment and the value of her claimed' exemptions, Reilly gave notice that she had reclaimed the listed property in full. See supra, at 796-800. To borrow the Court’s terminology, Reilly waved a “warning flag” that should have prompted Schwab to object if he believed the equipment could not be reclaimed in its entirety because its value exceeded the statutory cap. 534 F. 3d, at 179. See 4 Collier ¶ 522.05[2][b], p. 522-33 (“Normally, if a debtor lists an asset as having a particular value in the schedules and then exempts that value, the schedules should be read as a claim of exemption for the entire asset, to which the trustee should object if the trustee believes the asset has been undervalued.”).
Training its attention on trustees’ needs, moreover, the Court overlooks the debtor’s plight. As just noted, the Court counsels debtors wishing to exempt an asset in full to write “100% of FMV” or “full FMV” in the value-of-claimed-exemption column. But a debtor following the instructions that accompany Schedule C would consider such a response nonsensical, for those instructions direct her to “state the *809 dollar value of the claimed exemption in the space provided.” Fed. Rule Bkrtcy. Proc. Official Form 6, Schedule C, Instruction 5 (1991) (emphasis added). Chapter 7 debtors are often unrepresented. How are they to know they must ignore Schedule C’s instructions and employ the “warning flag” described today by the Court, if they wish to trigger the trustee’s obligation to object to their market valuation in a timely fashion? See In re Anderson, 377 B. R. 865, 875 (Bkrtcy. App. Panel CA6 2007).[15]
C
Schwab finally urges that requiring timely objections to a debtor’s market-value estimations “would give debtors a perverse incentive to game the system by undervaluing their assets.” Brief for Petitioner 35; see Brief for United States as Amicus Curiae 27. The Court rejected an argument along these lines in Taylor, and should follow suit here. Multiple measures, Taylor explained, discourage undervaluation of property claimed as exempt. 503 U. S., at 644. Among those measures: The debtor flies her exemption claim under penalty of perjury See Rule 1008. She risks judicial sanction for signing documents not well grounded in fact. Rule 9011. And proof of fraud subjects her to criminal prosecution, 18 U. S. C. § 152; extends the limitations period for filing objections to Schedule C, Rule 4003(b); and authorizes denial of discharge, 11 U. S. C. § 727(a)(4)(B). See also NACBA Brief 29-33 (detailing additional checks against inadequate or inaccurate filings).
*810 Furthermore, the objection procedure is itself a safeguard against debtor undervaluation. If a trustee suspects that the market value of property claimed as exempt may exceed a debtor’s estimate, he should do just what Eule 4003(b) prescribes: “[Fjile an objection . . . within 30 days after the meeting of creditors.”
* * *
For the reasons stated, I would affirm the Third Circuit’s judgment.
*811 [[Image here]]
APPENDIX
*812 [[Image here]]
*813 [[Image here]]
*814 [[Image here]]
*815 [[Image here]]
*816 [[Image here]]

 Reilly’s Schedules B and C, and the inventory she attached to the forms, are reproduced in an Appendix to this opinion.

 Unlike exemptions that describe the specific property debtors may preserve, e. g., 11 U. S. C. § 522(d)(6) (debtor may exempt her “aggregate interest, not to exceed [$1,850] in value, in any implements, professional books, or tool[s] of [her] trade”), the “wildcard” exemption permits a debtor to shield her “aggregate interest in any property” she chooses, up to a stated dollar limit, § 522(d)(5); In re Smith, 640 F. 2d 888, 891 (CA7 1981).

 Schwab informed Reilly at the meeting of creditors that he planned to sell all of her business equipment. App. 137a. She promptly moved to dismiss her bankruptcy petition, stating that her “business equipment... is necessary to her livelihood and art, and was a gift to her from her parents.” Id., at 138a. She “d[id] not desire to continue with the bankruptcy,” she added, because “she wishe[d] to continue in restaurant and catering as her occupation.” Ibid. The Bankruptcy Court denied Reilly’s dismissal motion simultaneously with Schwab’s motion to sell Reilly’s equipment. Id., at 149a-170a.

 In 2008, this prescription was recodified without material change and designated Rule 4003(b)(1).

 Section 522(d) catalogs exemptions of two types. Most exemptions— and all of those Reilly invoked — place a monetary limit on the value of the property the debtor may reclaim. See, e. g., § 522(d)(2) (“motor vehicle”); *801 § 522(d)(3) (“household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments”); § 522(d)(4) (“jewelry”). For certain exemptions not at issue here, the Bankruptcy Code authorizes reclamation of the property in full without any cap on value. See, e. g., § 522(d)(7) (“unmatured life insurance contract”); § 522(d)(9) (“[professionally prescribed health aids”); § 522(d)(ll)(A) (“award under a crime 'victim’s reparation law”).

 In support of its view that market value is not relevant to determining the “property claimed as exempt” for purposes of Rule 4003(b)’s timely objection mandate, the Court observes that Schedule C did not require the debtor to list this information until 1991. Ante, at 786-787. Prior to 1991, however, debtors recorded market value on a different schedule. See Interim Fed. Rule Bkrtey. Proe. Official Form 6, Schedule B-2 (1979) (requiring debtor to list the “[mjarket value of [her] interest [in personal property] without deduction for . . . exemptions claimed”). Trustees assessing the “property claimed as exempt,” therefore, have always been able, from the face of the debtor’s filings, to compare the value of the claimed exemption to the property’s declared market value. See Brief for National Association of Consumer Bankruptcy Attorneys et al. as Amici Curiae 34.

 By authorizing exemption of assets that a debtor would want to keep in kind, such as her jewelry and car, but limiting the exemptible value of this property, Congress struck a balance between debtors’ and creditors’ interests: Debtors can reclaim items helpful to their fresh start after bankruptcy, but only if those items are of modest value. Assets of larger worth, however, are subject to liquidation so that creditors may obtain a portion of the item’s value. Cf. In re Price, 370 F. 3d 362, 378 (CA3 2004) (“[Bjankruptcy law is bilateral, replete with protections and policy considerations favoring both debtors and creditors.”).

 The significance of market value is what differentiates capped exemptions from uncapped ones that permit debtors to exempt certain property in kind regardless of its worth. See swpra, at 800-801, n. 5. For uncapped exemptions, the nature of the property the debtor has reclaimed is dear: If the exemption is valid, the debtor gets the asset in full every time. For capped exemptions, however, market value is a crucial component in determining whether the debtor gets the item itself or a sum of money representing a share of the item’s liquidation value. Reading Bankruptcy Rule 4003(b) to require objections to valuation thus does not, as the Court contends, “elid[ej the distinction” between capped and uncapped exemptions, ante, at 784 (emphasis added), but instead accounts for that distinction.

 Suggesting that this interpretation of Rule 4003(b) “lacks statutory-support,” ante, at 786, n. 11, the Court repeatedly emphasizes that the Bankruptcy Code defines the “property claimed as exempt,” to which a trustee must object, as “the debtor’s ‘interest’ — up to a specified dollar amount — -in the assets described in [capped exemption] categories],” ante, at 782; see, e. g., ante, at 783; ibid., n. 9; ante, at 793, n. 19. But the commonly understood definition of a property “interest” is “[a] legal share in something; all or part of a legal or equitable claim to or right in property .... Collectively, the word includes any aggregation of [such] rights.” Black’s Law Dictionary 828 (8th ed. 2004). Schwab, therefore, could not comprehend whether Reilly claimed a monetary or an in-kind “interest” in her kitchen equipment without comparing her market valuation of the equipment to the value of her claimed exemption. See supra, at 802 and this page. In line with the statutory text, a debtor’s market valuation is an essential factor in determining the nature of the “interest” a debtor lists as exempt. Bankruptcy “forms, rules, treatise excerpts, and policy considerations,” ante, at 779, n. 5, corroborate, rather than conflict with, this reading of the Code.

 Schwab states that “[clases in which there are assets to administer... can take ‘one to four years’ to complete.” Brief for Petitioner 32 (quoting Dept. of Justice, U. S. Trustee Program, Preliminary Report on Chapter 7 Asset Cases 1994 to 2000, p. 7 (June 2001)).

 Money generated by liquidation of an asset will often be of less utility to a debtor, who will have to pay more to replace the item. See H. R. Rep. No. 95-595, p. 127 (1977) (noting that “household goods have little resale value” but “replacement costs of the goods are generally high”).

 This concern is questionable in light of the prevailing practice, for, as earlier noted, valuation objections are the most common Rule 4008(b) challenge. See swpra, at 796. By lopping off valuation disagreements from the timely objection requirement, see, e. g., ante, at 783, n. 8, the Court so severely shrinks the Rule’s realm that this question arises: Why are trustees granted a full 30 days to lodge objections? Under the Court’s reading of the Rule, trustees need only compare a debtor’s Schedule C to the text of the exemption prescriptions to assess an exemption claim’s facial validity, with no further investigation necessary. That comparison should take no more than minutes, surely not a month.

 Trustees, it bears noting, historically had valuation duties far more onerous than they have today. Rule 4003’s predecessor required trustees in the first instance, rather than debtors, to estimate the market value of property claimed as exempt. See Rule 403(b) (1975). Trustees had to provide this valuation to the court within 15 days of their appointment. See ibid.

 The leading bankruptcy treatise supplies an illustrative valuation objection:
“[Name of Trustee], the duly qualified and acting trustee of the estate of the debtor, would show the court the following:
“1. The debtor is not entitled under [the automobile exemption] to an interest of more than $3,225 in an automobile. The automobile claimed by debtor as exempt... has a value substantially greater than $3,225.
‘WHEREFORE Trustee prays that the court determine that debtor is not entitled to . . . the exemptiofn] claimed by him, that the [property claimed as exempt] which [is] disallowed be turned over to the trustee herein as property of the estate, and that he have such other and further relief as is just.” 13A Collier § CS17.14, p. CS17-22 (rev. 15th ed. 2009). See also Rules 9013-9014.

 Trustees, in contrast, are repeat players in bankruptcy court; if this Court required timely objections to market valuation, trustees would, no doubt, modify their practices in response. See 1 Collier ¶ 8.06[l][c][ii], p. 8-75 (rev. 15th ed. 2009) (“Since Taylor [v. Freeland & Kronz, 503 U. S. 638 (1992)], trustees rarely fail to closely scrutinize vague exemption claims.”). Moreover, because valuation objections are already the norm, see supra, at 796, and 805, n. 12, few trustees would have to adjust their behavior.